UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE BLUNDON,
LAURA HEINEN,

                      Plaintiffs,

                                                  **Hon. Hugh B. Scott**

                      v.                                      11CV990S

                                                     **Order**

GOODYEAR DUNLOP TIRES
NORTH AMERICA LTD,

                      Defendant.

      Before the Court are the parties' discovery motions in two related personal injury actions, Blundon v. Goodyear Dunlop Tires North America Ltd., No. 11CV990 (hereinafter "Blundon"), and Griffith v. Goodyear Dunlop Tires North America Ltd, No. 09CV761S ("Griffith"). Both sets of plaintiffs retained the same counsel and the motions and responses filed are virtually identical. For judicial efficiency, this Court will consider the motions in both cases in this Order. Where a docket number for an item is given without a case name, the item is from the Blundon case.

      First is plaintiffs' motion to compel inspection of defendant's Tonawanda, New York, tire plant (Blundon, Docket No. 22)[1]. Then defendant filed a series of motions, either to compel

---

[1] Plaintiffs submit the following documents in support of their motion to compel, Docket No. 22: Declaration of their attorney with exhibits, Memorandum of Law, an Expert Affidavit of Gary Derian (unsigned), Docket No. 22; the signed Expert Affidavit of Gary Derian (dated May 29, 2012), Docket No. 38.
     In opposition, in addition to its crossing motion for a Protective Order against inspection of its plant, Docket No. 26, defendant submits its attorney's Declaration, Docket No. 35; and Memorandum of Law, Docket No. 36.

production from plaintiffs of the tire and rims in the accident at issue (Blundon, Docket No. 24)[2], or for Protective Orders against disclosing confidential documents (Blundon, Docket No. 25)[3], or against inspection of its plant (Blundon, Docket No. 26)[4]. A similar set of motions were filed in Griffith (Docket Nos. 14 (plaintiffs' motion to compel), 16 (defendant's. motion to compel production of tires, rims), 17 (defendant's motion for Protective Order re documents), 19 (defendant's second motion for Protective Order re plant inspection)) by the same counsel as in Blundon.

Responses to the first motion initially were due by June 18, 2012 (Blundon, Docket No. 23), but were rescheduled as the other motions were filed in both cases. Responses to all

---

[2]In support of this motion to compel inspection of the tire and rims, defendant submits its attorney's Affirmation (with exhibit), Memorandum of Law, Affidavit of Jay K. Lawrence, Docket No. 24; Lawrence Affidavit (signed), Docket No. 28; Reply Affirmation, Docket No. 39; Reply Memorandum of Law, Docket No. 40; Affidavits of Gary Bolden (signed), Docket Nos. 43 (the signed version of Docket No. 39, Ex. B), 45; the Affidavit of James Stroble, Docket No. 46.
 In opposition, plaintiff submit their Memorandum of Law, Docket No. 31; their attorney's Responding Declaration, Docket No. 33; the Expert Affidavit of Derian, Docket No. 38.

[3]In support of this motion for a Protective Order against disclosing confidential materials, defendant submits its Memorandum of Law, the Affirmation of its counsel and exhibits, Docket No. 25; the Affidavit of Joseph Devic, Docket No. 29; its Reply Memorandum of Law, Docket No. 41.
 In opposition, plaintiffs submit their Memorandum of Law, Docket No. 31; their attorney's declaration with exhibits, Docket No. 32.

[4]In support of this motion for a Protective Order against inspection of its plant, defendant submits its attorney's Affirmation and exhibits, Memorandum of Law, Docket No. 26; Reply Memorandum, Docket No. 42; as well as their opposition papers to plaintiffs' motion to compel, see Docket Nos. 35-36.
 In addition to their motion to compel the inspection, Docket No. 22, and supporting papers, Docket Nos. 22, 38, plaintiffs submit in their opposition to defendant's motion their Memorandum of Law, Docket No. 31; their attorneys' affirmations with exhibits, Docket Nos. 32, 34.

2

motions then were due by June 22, 2012, with any replies due by June 29, 2012, and the motions in both cases submitted as of June 29, 2012 (Blundon, Docket No. 27; Griffith, Docket No. 20).

BACKGROUND

Both cases are removed diversity product liability actions arising from automobile accidents where defendant's tires allegedly failed. In Blundon, plaintiff Leslie Blundon was driving a Harley Davidson motorcycle with Laura Heinen as a passenger (see Blundon, Docket No. 24, Def. Memo. at 2). A Dunlop D402 tire manufactured by defendant was on the rear wheel of that motorcycle (see id.). Plaintiffs contend that the rear tire deflated without warning, causing loss of control and the motorcycle crashed, injuring plaintiffs (id.).

In Griffith, on or about April 24, 2005, plaintiff Daniel Griffith purchased a 2005 Harley Davidson motorcycle with a Dunlop D402 rear tire and purchased a new D402 rear tire on October 4, 2007 (Griffith, 11CV761, Docket No. 1, Notice of Removal, Ex. 1, Compl. ¶¶ 7, 8). On or about July 29, 2009, the Griffiths were riding on that motorcycle in California when the rear tire suddenly deflated causing loss of control and crashing the motorcycle (id. ¶ 9).

On March 15, 2012, a joint Scheduling Conference was held for both cases (Blundon, Docket No. 16; Griffith, Docket No. 8) and Scheduling Orders were entered with common deadlines (Blundon, Docket No. 17; Griffith, Docket No. 9). According to the Scheduling Orders, plaintiffs' expert disclosure is due by February 1, 2013; defense expert disclosure by March 15, 2013; discovery concludes by March 29, 2013; and dispositive motions are due by June 28, 2013 (Blundon, Docket No. 17; Griffith, Docket No. 9).

*Plaintiffs' Motion to Compel and Defense Motion for Protective Order and Defendant's Plant*

Plaintiffs in both cases seek to inspect defendant's North Tonawanda, New York, plant pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv) (Blundon, Docket No. 22; Griffith, Docket No. 14), while defendant cross moves for a Protective Order against such an inspection without conditions (Blundon, Docket No. 26; Griffith, Docket No. 19). Plaintiff served their request for discovery and inspection on or about March 21, 2012, to be held on a mutually convenient date by April 30, 2012 (Blundon, Docket No. 22, Pls. Memo. at 1). Defendant had not responded to this request (id.). Plaintiffs first argue that defendant waived any objection because it failed to respond to the request (id. at 1-2). They contend that the inspection of the plant is material and relevant to their claims (id. at 2-4). They argue that defendant's proposed "blanket Protective Order" as a precondition to conducting this inspection is unwarranted (id. at 4-5). In response to the crossing motion for a Protective Order against this inspection, plaintiffs cite CPLR 3101(a) to justify their need to inspect defendant's plant, where a defective design, manufacture, testing, and construction action makes inspection of the place and process of manufacture material and necessary to plaintiffs' claims (Blundon, Docket No. 31, Pls. Memo. at 4-5).

In its motion for a Protective Order against the inspection of its plant, defendant argues that an inspection of the plant is unwarranted and unnecessary, potentially revealing defendant's trade secrets and other confidential and proprietary information (Blundon, Docket No. 26, Def. Memo. at 1).

*Defense Motion for Second Protective Order*

Defendant also moves for a Protective Order against disclosure of confidential and proprietary documents (Blundon, Docket No. 25; Griffith, Docket No. 17). Defendant has successfully obtained similar Protective Orders in 34 different cases in seven other federal courts (Blundon, Docket No. 25, Def. Memo. at 1).

Plaintiffs concede that some information is confidential but argue that defendant's proposed Protective Order here is "draconian" and unacceptable (Blundon, Docket No. 31, Pls. Memo. at 6).

*Defense Motion to Produce Tire and Rims*

Defendant also moves for plaintiffs to produce the tire and rims at issue here (Blundon, Docket No. 24; Griffith, Docket No. 16). In a separate New York State tort action, Goodman v. Goodyear Dunlop Tire N. Am., Ltd., Index No. 2011-04070, plaintiffs' counsel in these two actions denied defendant's request to inspect the tire and rims, offering instead to have inspection occur at a time and location of plaintiffs' choosing and with plaintiffs' counsel and expert present (Blundon, Docket No. 24, Def. Memo. at 2). Plaintiffs' counsel in the present Blundon action made a similar declaration as to producing the tire and rims in this case (id.). Defense counsel wrote a "good-faith letter" to plaintiffs' counsel on May 11, 2012, renewing the request to have the tire and rims produced for inspection (id. at 3; Docket No. 24, Def. Atty. Affirm. Ex. A).

Defendant's forensic experts have a non-portable laboratory in Akron, Ohio (Blundon, Docket No. 24, Def. Memo. at 1; Docket No. 28, Lawrence Aff. ¶¶ 5, 9). Defendant insists upon conducting its examination at its expert's Akron laboratory. It further argues that the inspection

should not occur in the presence of plaintiffs or their experts (Blundon, Docket No. 24, Def. Memo. at 5-6).

Plaintiffs insist upon accompanying the evidence and remaining present during testing, either live during inspection or by videotaping of the inspection (Blundon, Docket No. 31, Pls. Memo. at 1-3). Citing Texas state cases[5], plaintiffs argue that defense experts may find damage to the tire or rims or other items that may become controversial that presumably would be avoided if plaintiffs or their experts were also present to observe what defendant's expert observes (see id. at 3-4).

DISCUSSION

I.  Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). Initial disclosure includes producing "a copy of, or a description by category and location of, all documents . . . that are in the possession, custody, or

---

[5]Rodriguez v. Firestone Tire & Serv. Centers, No. C-115,396 (244th Dist. Ct. Ector County Tex.); Hargrove v. Hankook Tire Am. Corp., No. 42940 (118th Dist. Ct. Howard County Tex.); Cruz v. Michelin N. Am., No. 2007-CV-01410A (197th Dist. Ct. Willacy County Tex.).

control of the party and that the disclosing party may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(B).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a Protective Order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a Protective Order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). As noted by defendant (see Docket No. 26, Def. Memo. at 4), a Protective Order may change the method of discovery sought by the inquiring party or may preclude revealing a trade secret or other confidential information, Fed. R. Civ. P. 26(c)(1)(C), (G). The appropriateness of a Protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245

(S.D.N.Y. 2005). This Court has broad discretion in issuing such a Protective Order. Seattle Times, supra, 467 U.S. at 36.

II.     Motion to Compel Production of Tires and Rims

Here, the parties disagree as to the manner for the inspection of plaintiffs' tires and rims in both cases. Plaintiffs are concerned that the tires (the best evidence from the accident) may be lost, damaged, or destroyed in the discovery process if left in defendant's hands (see Docket No. 33, Pl. Atty. Decl. ¶¶ 2, 3). Plaintiffs would have the tires inspected but without losing custody of them (id. ¶ 4). Plaintiffs' counsel recounts examples in other cases where defendants had custody of key evidence for those plaintiffs' claims and the evidence got lost or disposed of prior to trial (id. ¶ 5). Plaintiffs argue that defendant seeks to test these tires in Akron, Ohio, without explaining why testing could not occur at defendant's plant in this District (id. ¶ 6). Plaintiffs' counsel then cites the procedure used in Goodman v. Goodyear Dunlop, Index No. 2011-04070, a pending New York State Supreme Court tort action involving the examination of a similar tire (id. ¶ 7). The inspection in Goodman was ordered in Akron, Ohio, but with plaintiff's representatives allowed to be present (id.). Plaintiffs deny that defendant's examination equipment (cf. Docket No. 28, 1st Aff. of Jay Lawrence ¶ 9) is not portable, citing the experience of the inspection in Goodman which took place around a table (Docket No. 33, Pls. Atty. Decl. ¶ 10, Ex. A). Defendant in turn vigorously denies this, producing the affidavits of two Goodyear Dunlop employees about the Goodman inspection (Docket No. 43, Bolden Aff.; Docket No. 46, Stroble Aff.).

Defendant proposes to examine the tires at its facility in Akron, Ohio, because that facility has "specialized tools and equipment for non-destructive examination," including tire

mounting machines, tools and equipment; x-ray equipment; tire pressure inflation and monitoring equipment; laboratory lighting, and magnification devices (Docket No. 24, Def. Memo. at 3; id., Def. Atty. Affirm. ¶ 4, Ex. A), and defendant's forensic team is based in Akron (id., Def. Memo. at 4). Defendant assures that the examinations and evaluations would be non-destructive and non-altering (id. at 8; id., Def. Atty. Affirm., Ex. A; Docket No. 28, Lawrence Aff. ¶¶ 6-7, 9; Docket No. 46, Stroble Aff. ¶ 4). Plaintiffs have already conducted their own non-destructive testing of these tires (Docket No. 24, Def. Memo. at 5). Defendant argues that "each party should be free to engage in its own trial preparation unhampered by the intrusive supervision of the opposing party" (id.).

Defendant's motions in these cases to compel production of the tires and rims for non-destructive testing at defendant's Akron, Ohio, laboratory is **granted**. Defendant cites several state and federal courts that have authorized similar inspection of evidence at those defendants' location of choice (Docket No. 24, Def. Memo. at 7-8, nn.18-26, citing cases), while plaintiffs cite to a New York State case, Poyer v. Wegman's, 242 A.D.2d 843, 662 N.Y.S.2d 153, 154 (3d Dep't 1997) (Docket No. 31, Pls. Memo. at 1), which permitted the opponent to be present during a discovery inspection, or cases from other states which had discovery occur not "in secret" but with those plaintiffs present. Federal Rules 26(c), 34, and 37, however, do not require the opponent's presence during the inspection of relevant material. Poyer, for example, the New York State Supreme Court exercised its discretion in setting forth the conditions for defendant's inspection of the broken bottle neck that was at issue there, 242 A.D.2d at 843, 662 N.Y.S.2d at 154.

9

In this Court's exercise of discretion in setting forth the means for discovery, defendant is to receive the tires and rims for inspection, conduct non-destructive and non-invasive testing and examination, and return them to plaintiffs. Failure to return the tires and rims as they were sent to defendant may result in an adverse instruction that the missing or destroyed tires or rims were as plaintiffs described them. This is similar to the protocol adopted in a case where defendants wanted to inspect in this District a car owned by a plaintiff located outside of this District, see Henry v. Niagara County, No. 10CV800, 2012 U.S. Dist. LEXIS 16439, at *15-16 (W.D.N.Y. Feb. 9, 2012) (Scott, Mag. J.), which, in turn, relied upon the procedures used by tire manufacturers in product liability actions, id. (citing cases). Therefore, defendant's motions (Blundon, Docket No. 24), is **granted**.

III.  Inspection of Defendant's Plant; Plaintiffs' Motion to Compel and Defense Motion for Protective Order

Plaintiffs argue that, in order to "fully conduct meaningful depositions, confer with experts and to request relevant and material documentation," they need to inspect defendant's tire plant where the tires at issue were manufactured (Docket No. 22, Pls. Memo. at 2). Plaintiffs seek to see where the alleged defective tires were manufactured, arguing that "an inspection of the place and the process in how that tire was manufactured is certainly material and necessary to [Plaintiffs'] claim" (id. at 3).

Defendant responds that plaintiffs need to show that a plant tour is both relevant and necessary to counter defendant's assertion that the plant contains numerous trade secrets (Docket No. 26, Def. Memo. at 5; see Docket No. 26, Def. Atty. Aff., Ex. E, Aff. of Aaron Hilderbrand).

10

Plaintiffs reply that they allege a defect in the tire, the lack of adhesive dip on the polyester carcass cords (Docket No. 38, Derian Aff. ¶ 3; Docket No. 34, Pls. Atty. Reply Aff. ¶ 4), and that they need to know whether the cords were dipped in the factory or are delivered pre-dipped (Docket No. 34, Pls. Atty. Reply Aff. ¶ 5), hence they need to inspect defendant's factory (id. ¶ 17). Plaintiffs obtained the statements of former defendant employees who stated that the conditions at the plant are at issue "and could affect the quality of the product produced" there (id. ¶¶ 11, 7-10, Exs. A, B). Plaintiffs deny that the plant and its manufacturing processes are trade secrets since they have been published (id. ¶¶ 13, 18, Ex. C).

Plaintiffs' motion to compel the inspection (Docket No. 22) is **granted** and defendant's motion for a Protective Order against or regulating that inspection (Docket No. 25) is **denied**. Plaintiffs have established that an inspection of the plant is relevant, given their defective product claim, and necessary to explore their contention that defects in the plant or its operation may have caused the particular alleged defect in the tire at issue. Although defendant agrees to produce what it terms "a wealth of information and documents concerning the Subject Tire" (Docket No. 26, Def. Memo. at 6, 10; see also id. at 1), defendant does not claim that this documentation includes materials that may be seen during an inspection of the plant.

IV.     Defendant's Motion for Protective Order Regarding Proprietary Documents

The issue surrounding defendant's motion for a Protective Order regarding its confidential and proprietary material is the scope of that Order. Plaintiffs argue that defendant's proposed Order is "draconian" and that analysis, for example, of steel belted radial tires is reported by Smithers Scientific Services to manufacturers, so the physical properties and chemical makeup of their tires is widely known among tire manufacturers (Docket No. 31, Pls.

Memo. at 6). Defendant has preemptively declared all its documents to be confidential or proprietary and required plaintiffs to enter into a stipulated Protective Order before any document production was made (Docket No. 32, Pls. Atty. Decl. ¶ 7). Thus, plaintiffs conclude that any information disseminated within the tire manufacturer community or could be reverse engineered are not "trade secrets" (Docket No. 31, Pls. Memo. at 6), also information disclosed to government agencies should be beyond a Protective Order (id. at 7). Plaintiffs also urge that any Protective Order should allow counsel to share information with other attorneys and experts (id.), but without providing any limitation on which attorneys or experts could receive it or for what purpose.

Defendant denies that it seeks to declare all documents to be proprietary (Docket No. 41, Def. Response Memo. at 1), rather it seeks specific documents and categories of documents to be deemed confidential (id. at 1-2; e.g., Docket No. 13, Def. Initial Disclosure ¶ B.3., at 3; Docket No. 29, Devic Aff. ¶¶ 12-15). Defendant remains opposed to authorizing sharing this information (Docket No. 41, Def. Response Memo. at 1, 4-7).

Defendant's proposed Protective Order (Docket No. 25, Def. Atty. Affirm. Ex. A) would limit information to the Court, the parties, counsel of record, their associated attorneys, independent professional engineers, accident reconstruction or other independent experts retained by a party (id., ¶ 2). The proposed Order defines confidential information or material as trade secrets as designated by defendant (id. I.A., at 1).

The parties differ on the scope of any Protective Order. If trade secrets in this action limited to the categories defendant listed in its initial disclosure (see Docket No. 13, ¶ B.3., at 3), the Protective Order would be acceptable, balancing plaintiffs' litigation needs and the

12

protectable interests of the defendant from whom discovery is sought, see Mitchell, supra, 227 F.R.D. at 245.

On plaintiffs' demand that they be able to share data with other attorneys and experts not retained for this case, plaintiffs fail to explain why such sharing beyond counsel of record, their associates, and experts retained by plaintiffs is necessary to prosecute this case. Therefore, any Protective Order **need not require sharing data beyond those necessary for the prosecution of this case**.

Defendant's motion for a Protective Order (Blundon Docket No. 25) is **granted** on the conditions stated herein.

V.   Is Amending the Scheduling Order Necessary?

According to the current Scheduling Orders in both cases, discovery is to be completed by March 29, 2013 (e.g., Blundon, Docket No. 17). No party has sought an extension of this schedule. It is hoped that the consideration of these motions has not delayed the discovery period anticipated by the parties and that the parties will comply with the terms of this Order (and the parallel Order in Griffith) to expedite completion of discovery where ordered herein. Nevertheless, this Court will entertain a timely request to adjust the Scheduling Order.

CONCLUSION

For the reasons stated above, plaintiffs' in Blundon v. Goodyear Dunlop, 11CV990, motion to compel inspection of defendant's plant (Docket No. 22) is **granted**, while defendant's motion for a Protective Order against inspection of its plant without preconditions (Docket No. 26) is **denied**. Defendant's motion to compel production of the tire and rims at issue

(Docket No. 24) is **granted**. Defendant's motion for another Protective Order against disclosure of confidential and proprietary documents (Docket No. 25) is **granted**.

Similarly, plaintiffs' in Griffith v. Goodyear Dunlop, No. 11CV761, motion to compel (Docket No. 14) is **granted**, while defendant's motion for a Protective Order against inspection of its plant without preconditions (Docket No. 19) is **denied**. Defendant's motion to compel production of the tire and rims at issue (Docket No. 16) is **granted**. Defendant's motion for another Protective Order against disclosure of confidential and proprietary documents (Docket No. 17) is **granted**.

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 9, 2012