UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE BLUNDON and LAURA HEINEN,

Plaintiffs,

**Hon. Hugh B. Scott**

11CV990S

v.

**Order**

GOODYEAR DUNLOP TIRES
NORTH AMERICA, LTD.,

Defendant.

Before the Court is defendant's motion for summary judgment (Docket No. 129)[1].

Defendant is also in a similar action, Griffith v. Goodyear Dunlop Tires North America, Case

No. 11CV761 (hereinafter "Griffith"), and plaintiffs there are represented by the same attorney

as in the present case. This Court entered there a parallel scheduling Orders to the schedule in

this case. Defendant also made a similar summary judgment motion in Griffith (Griffith, Docket

No. 119; see Griffith, Docket No. 120, briefing Order).

BACKGROUND

In these motions, the parties, initially without discussion, apply New York law to these

cases. The accidents at issue occurred in California (for Griffith) and Arizona (for Blundon);

plaintiffs in Griffith are citizens of California (Griffith, Docket No. 1, Notice of Removal, at 1),

whereas plaintiffs in Blundon are citizens of New Hampshire (Docket No. 1, Notice of Removal

---

[1]Docket citations without a case name refer to items in Blundon.

at 1).  Defendant is an Ohio corporation with its principal place of business in Ohio (e.g., Docket

No. 1, Notice of Removal, at 2) and authorized to do business in New York with offices in

Tonawanda, New York, where the tires at issue were manufactured (id., Ex. A, Compl. ¶¶ 2, 3,

6).  Plaintiffs commenced their actions in New York State Supreme Court, Erie County, and

these cases were removed to this Court (see id.).  The parties were ordered to submit briefing on

(1) which jurisdiction's law should apply to this case and (2) whether there exists a conflict with

the laws of the other potential jurisdictions (including New York) for the issues in this case, and

that briefing was due by October 2, 2015 (Docket Nos. 135, 133).

   In Griffith, the parties agreed the California law, the law of the plaintiffs' domicile and

the site of the accident, applied (Griffith, Docket Nos. 126, 127, 128).

DISCUSSION

I.      New York State Choice of Law Standards

   In a diversity jurisdiction action, this Court initially must apply the substantive law of our

forum state, New York, see Erie R.R. v. Tompkins, 304 U.S. 64 (1983); Ocean Ships, Inc. v.

Stiles, 315 F.3d 111, 116 n.4 (2d Cir. 2002), including its choice of law regime, Klaxon v.

Stentor, 313 U.S. 487 (1941).  In personal injury actions, New York has generally applied the

law of the jurisdiction in which the injury occurred.  See Cooney v. Osgood Machinery, Inc.,

81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993); Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64

(1972).  New York law has evolved to conducting a "flexible 'interest analysis' approach,"

wherein New York courts "seek to apply the law of the jurisdiction with the most significant

interest in, or relationship to, the dispute," White v. ABCO Eng'g, 221 F.3d 293, 301 (2d Cir.

2000) (Miner, J.) (citing AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992); see

2

Babcock v. Jackson, 12 N.Y.2d 473, 481-82, 240 N.Y.S.2d 743, 749-50 (1963)).  In determining

the prevailing interest, this Court looks "only to those facts or contacts that relate to the purpose

of the particular laws in conflict.  'Under this formulation, the significant contacts are, almost

exclusively, the parties' domiciles and the locus of the tort.'" AroChem Int'l, supra, 968 F.2d at

270 (quoting Schultz v. Boy Scouts of Am., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985)

(quoted in White, supra, 221 F.3d at 301).

II.      Existence of Conflict

         Under New York choice of law rules, "the first step in any case presenting a potential

choice of law is to determine whether there is an actual conflict between the laws of the

jurisdiction involved."  Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 223, 597 N.Y.S.2d

904, 905 (1993).  All parties concede that there are conflicts of law, but differ on the precise

issues in conflict (compare Docket No. 136, Pls. Memo. at 1-2 with Docket No. 137, Def. Letter

at 4-5).  Plaintiffs claim conflicts between Arizona and New Hampshire law in the burdens of

proof (Docket No. 136, Pls. Memo. at 1) and comparative negligence law (id. at 2; cf. Docket

No. 137, Def. Letter at 4), but also differences in statutes of limitations that are not applicable to

this case (Docket No. 136, Pls. Memo. at 2).  Defendant argues that there is a conflict regarding

strict liability and failure to warn and the burden of proof (Docket No. 137, Def. Letter at 4), as

well as plaintiff's contributory negligence, assumption of the risk, modification, and product

misuse/abuse as defenses in a strict liability claim (id. at 5).  Thus, conflict analysis is

appropriate, Matter of Allstate Ins. Co., supra, 81 N.Y.2d at 223, 597 N.Y.S.2d at 905.

3

III.     Which Jurisdiction's Law Applies?

Initially, no party has presented the laws of the alternative jurisdictions that might be applicable to determine whether a conflict exists; instead, each party generally applied New York law to this case.  Under New York's choice of law procedure, however, the relevant jurisdictions in this case would be Ohio (defendant's state of incorporation and principal place of business), Arizona (site of accident), and New Hampshire (plaintiffs' domicile).  The site of manufacture is not relevant, Burnett v. Columbus McKinnon Corp., 69 A.D.3d 58, 59-60, 887 N.Y.S.2d 405, 407-08 (4th Dep't 2009) (place of manufacture is not situs of tort for products liability action).

Plaintiffs argue that Arizona law, the law of the site of the accident, applies (Docket No. 136, Pls. Memo.).  Defendant meanwhile contends that plaintiffs' domicile in New Hampshire makes that state's law applicable (Docket No. 137, Def. Letter at 5-6).

Plaintiffs contend that if the rules regulate conduct[2], New York choice of law principles usually apply the law of the place of the tort (Docket No. 136, Pls. Memo. at 2, 4), Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999); Youngman v. Robert Bosch LLC, 923 F. Supp. 2d 411, 416 (E.D.N.Y. 2013); Cooney v. Osgood Machinery, 81 N.Y.2d 66, 76, 595 N.Y.S.2d 919, 925 (1993) (conduct regulating laws are at issue, law of site of tort applies), here Arizona (id. at 1, 7).

Defendant argues that plaintiffs, New Hampshire residents, were merely passing through Arizona, but their economic damages were incurred in New Hampshire; thus, New Hampshire would have an interest to have its loss allocation rules apply here (Docket No. 137, Def. Letter at 5).  Defendant concludes that "plaintiffs would not reasonably expect to be subject to the laws of

---

[2]As opposed to loss allocation rules, see note 3 infra.

another state's jurisdiction with respect to these loss allocation issues" (id.).  New Hampshire

law would be consistent with New York law, which plaintiffs (frankly both parties) have been

applying to date (id.).  Defendant asserts that Arizona, on the other hand, has "little interest in

applying loss allocation laws to this case since none of its residents are parties to the litigation"

(id.), Schultz v. Boy Scouts of Am., 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 95-96 (1985), and the

accident site was fortuitous (id. at 6).  Defendant argues the accident situs of Arizona is less

important for a products liability action since the tortious conduct actually occurred where the

tire was manufactured, in New York (id. at 5-6), see Datskow v. Teledyne Cont. Motors Aircraft

Prods., 807 F. Supp. 941, 944 (W.D.N.Y. 1992) (Larimer, J.).  New Hampshire has "in important

interest in applying its laws with respect to consumer products to its citizens and the businesses

that supply products to its citizens" (id. at 6).

Defendant concludes, however, by stating that the issues underlying its motion do not

have a conflict between the four jurisdictions considered for conflicts analysis and require

application of "common fundamental principles of law" (id. at 8) to adjudicate its summary

judgment motion, without stating the source of that law.  While some of the issues defendant

points to in its motion go to applying failure to warn claim standards that "span[] the various

jurisdictions" (cf. id. at 7-8), without stating whether there exists differences between Arizona

and New Hampshire as to the applicable standards.

All parties point out differences in Ohio law from New Hampshire, Arizona, or New

York law (such as whether there would be caps of damages in product liability actions), but Ohio

law would not be applicable to this action, see Burnett, supra, 69 A.D.3d at 59-60, 887 N.Y.S.2d

at 407-08.  New York substantive law also is not applicable here, see id.

5

Under Neumeier, supra, 31 N.Y.2d 121, 335 N.Y.S.2d 64, the New York Court of Appeals set forth three rules for potential and actual conflicts.  The first is if all parties are from the same domicile, then in the "false conflict situation" that jurisdiction's law applies, id., 31 N.Y.2d at 128, 335 N.Y.S.2d at 70.  For the second rule, the parties are from different jurisdictions, the law favors the respective parties, and the tort occurred in one of the jurisdictions.  Under Neumeier, the place of the tort tips the otherwise even scales between the disputing jurisdictions to determine which jurisdiction's law applies, id.; Cooney, supra, 81 N.Y.2d at 73, 595 N.Y.S.2d at 923.  The third Neumeier rule applies when the parties are from different jurisdictions and the tort occurred in a different jurisdiction; in that case, generally the law of the place where the tort occurred applies, Neumeier, supra, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70.  (Docket No. 137, Def. Letter at 3.)  But under the third rule "in which the competing interests of the domiciliary and the locus jurisdictions are not roughly equal, rule three holds that there is no need to use the law of the locus jurisdiction as the tie-breaker," (id.), Caruolo v. John Crane, Inc., 226 F.3d 46 (2d Cir. 2000); but Caruolo involved application of Neumeier rule two, id. at 58.  This third rule is "less categorical" than the others, where the site of the accident may not provide the source of law "if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants," Neumeier, supra, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70 (quoting Tooker v. Lopez, 24 N.Y.2d 569, 585, 301 N.Y.S.2d 519, 532 (1969) (Fuld, Ch. J., concurring)).

All parties concur that the third Neumeier rule applies there (a case involving at least three jurisdictions, plaintiffs' domicile, defendant's state of incorporation, and the site of the

accident), but defendant goes into policy reasons for not automatically applying the site of the accident's law, while plaintiffs go to the default site of the accident's law. This interest analysis was refined in Schultz v. Boy Scouts of America, supra, 65 N.Y.2d at 198, 491 N.Y.S.2d at 95-96. The Court of Appeals here recognized that "the relative interests of the domicile and the locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict in the case," with rules of conduct generally being governed by the law of the site of the incident, while loss allocation rules (limiting damages for wrongful death, vicarious liability rules, or immunities from suit) for the locus jurisdiction "has at best a minimal interest in determining the right of recovery or the extent of the remedy," id. at 198, 491 N.Y.S.2d at 96; see also Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521-22, 620 N.Y.S.2d 310, 311 (1994) (classifying substantive law and legal rules as either conduct-regulating or loss-allocating for choice of law analysis)[3].

This Court then considered whether the choice of law made in the parallel motorcycle tire action pending can assist in this case. In Griffith, Neumeier rule 2 applies, since the plaintiffs there were from the same state as the site of the accident, California; despite the fact that both this case and Griffith involve products liability claims, where (as defendant argues here) the site of the accident is secondary (also, all parties were in agreement as to the applicable jurisdiction's law).

---

[3]Conduct-regulating laws govern conduct to prevent injury, while loss-allocating rules prohibit, assign or limit liability, see Fargas v. Cincinnati Mach., LLC, 986 F. Supp. 2d 420, 423 (S.D.N.Y. 2013) (citing cases). At least one court criticizes creating a bright line between regulating conduct rules and loss allocation rules, Champlain Ent., supra, 945 F. Supp. at 472.

In product liability actions, "New York gives greater weight to the law of the victim's domicile.  See Colon v. BIC USA, Inc., 199 F. Supp. 2d 53, 81 (S.D.N.Y. 2001) . . .; Smith v. Bell Sports, Inc., 934 F. Supp. 70 (W.D.N.Y. 1996) (Larimer, C.J.) . . . ," Campbell v. Nacco Materials Handling Group, Inc., No. 09CV376A, 2011 U.S. Dist. LEXIS 126083, at *14-15 (W.D.N.Y. Sept. 9, 2011) (Scott, Mag. J.) (R&R) (parentheticals omitted), accepted in part, rejected in part, 2011 U.S. Dist. LEXIS 125872 (W.D.N.Y. Nov. 1, 2011) (Arcara, J.) (rejecting preclusion recommendation).

Applying in Blundon New York interest analysis in this Neumeier rule 3 situation for a products liability action, the injury here occurred potentially in three places:  where the allegedly defective tires were manufactured (New York); where those tires were purchased by plaintiffs (New Hampshire); or where the accident occurred with the tires (Arizona).  The Appellate Division, Fourth Department in Burnett held in a similar Neumeier rule 3 situation involving product liability claim (with an Ohio plaintiff suing a New York corporation for an accident that occurred in Indiana) that Indiana law (the site of the accident) applied, 69 A.D.3d at 62-63, 887 N.Y.S.2d at 409-10.  That court, Burnett, supra, 69 A.D.3d at 62, 887 N.Y.S.2d at 410, rejected this Court's decision in Datskow, supra, 807 F. Supp. at 944 (W.D.N.Y. 1992) (Larimer, J.), that the tort there was not the crash but the construction of the defective engine leading to the crash, the last event necessary for that products liability tort occurring in the place of manufacture.

Given the nature of the alleged torts for products liability, the applicable substantive law is **New Hampshire**, plaintiffs' domicile, see Campbell, supra, 2011 U.S. Dist. LEXIS 126083, at *14-15.  This case involves rules of conduct, cf. Champlain Ent. v. United States, 945 F. Supp. 468, 472 (N.D.N.Y. 1996) (noting the difficulty in labeling products liability cases for loss-

8

allocative or conduct regulation categories) (Docket No. 137, Def. Letter at 6), the applicable conduct is putting the product in the stream of commerce, which occurred in New Hampshire (where plaintiffs bought the tires), rather than where the tires were manufactured (New York), cf. Datskow, supra, 807 F. Supp. at 944, or where the accident occurred (Arizona).  As found by Judge Larimer in Datskow, there is little reason to apply the law of Arizona due to "the purely adventitious circumstance of that the accident occurred there," id. (quoting Babcock, supra, 12 N.Y.2d at 482, 240 N.Y.S.2d at 750).

In Champlain Ent., the Northern District of New York applied New York choice of law rules for an airplane crash in New York of an aircraft manufactured and sold by a Kansas firm and determined that Kansas law should apply, rather than the law of New York (the accident site), 945 F. Supp. at 472, 474 (Docket No. 137, Def. Letter at 6).  There, no negligence or misconduct was alleged to have occurred in New York, since "the alleged causative misconduct occurred in Kansas, where defendant Beech manufactured the aircraft," id. at 474.  That court found that product liability laws were both to regulate conduct and allocate loss, and weighed the interests of New York and Kansas, id. at 472, with New York's interests being disfavored because New York courts recognize that products liability cases involving mobile products, such as airplanes and tires, often consider the mobility of the product, id. at 473, citing Hadar v. Concordia Yacht Builders, 886 F. Supp. 1082, 1093-94 (S.D.N.Y. 1995); Campbell v. Goodyear Tire & Rubber Co., No. 83 Civ. 6282, 1985 WL 1514, at *1 (S.D.N.Y. June 3, 1985).

Despite the agreement of the parties there, this same analysis applies to the choice of law in Griffith, since California was both where those plaintiffs resided and where they purchased the tires at issue (see Griffith, Docket No. 128).

Defendant concludes its argument that choice of law is not material here since "common fundamental principles of law" (cf. Docket No. 137, Def. Letter at 8) govern its defenses and plaintiffs' claims in its motion.  But the parties initially argued New York law for the most part for the common principles of law (see generally Docket No. 129, Def. Memo.; Docket No. 131, Pls. Memo.; Docket No. 132, Def. Reply Memo.), with defendant arguing an Arizona case that plaintiffs were duplicating the manufacturing defect claim by asserting a failure to warn claim (Docket Nos. 129, Def. Memo. at 4-5, 132, Def. Reply Memo. at 4, citing Mather v. Caterpillar Tractor Corp., 533 P.2d 717 (Ariz. Ct. App. 1975)).  This Court holds, however, that **New Hampshire** legal principles apply here.  Parties shall brief the issues in this motion for summary judgment under the law of **New Hampshire** by **October 23, 2015**.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
         October 13, 2015

10