UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE BLUNDON and
LAURA HEINEN,

                                    Plaintiffs,                          **Hon. Hugh B. Scott**


                                                                         **11CV990S**

                              v.                                         **Report
                                                                         &
                                                                         Recommendation**


GOODYEAR DUNLOP TIRES NORTH
AMERICA, LTD.,

                                    Defendant.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 86; cf. Docket No. 10 (initial non-dispositive referral)).  The instant matter before

the Court is the motion of defendant (Docket No. 129) for summary judgment.  Responses were

due by July 17, 2015, and any reply by August 5, 2015 (Docket No. 130), and the parties filed

timely responses (Docket No. 131) or reply (Docket No. 132), and this motion was deemed

submitted as of October 23, 2015, following further choice of law briefing (see Docket Nos. 133,

135, 138 (Order declaring New Hampshire law applicable), 136 (plaintiffs' choice of law

briefing), 137 (defendant's choice of law briefing), 139 (plaintiffs' New Hampshire law

analysis), 140 (defendant's New Hampshire law analysis)).  Defendant sought leave to

supplement its briefing (Docket No. 141), which was granted (Docket No. 142).  Plaintiff thus

were given until November 19, 2015, to reply (id.; see Docket No. 143) and defendant's original

motion for summary judgment was deemed submitted (without oral argument) on November 19, 2015 (Docket No. 142).  In their supplemental papers, plaintiffs note that the tire at issue was purchased in Tennessee (Docket No. 143, at 2 n.1; see also Docket No. 131, Pls. Counter-Statement ¶ 20; Docket No. 131, Pls. Atty. Decl. ¶ 7, Ex. A, Blundon EBT Tr. at 94-95); the impact of introducing yet another potential jurisdiction into the choice of law analysis will be addressed below.

This defendant is also the defendant in Griffith, et al. v. Goodyear Dunlop Tires North America, Ltd., Case No. 11CV761 (hereinafter "Griffith"), and filed an almost identical summary judgment motion in that case, see Griffith, Docket No. 119.  This Court issued a Report and Recommendation in this other case recommending that the motion be granted (Griffith, Docket No. 132; see Griffith, Docket No. 133 (plaintiffs' Objections)), Objections are pending; familiarity with which is presumed since plaintiffs' counsel is also the same in both cases.

## BACKGROUND

Plaintiffs in Blundon are residents of New Hampshire who (having purchased the rear tire for their motorcycle in Tennessee) had an accident in Arizona on their motorcycle.  Defendant is an Ohio corporation with a plant in the Western District of New York.

According to so much of the uncontested portions of defendant's Statement of Material Facts in this case (Docket No. 129), plaintiffs commenced this action on September 2, 2011, from a motorcycle accident on September 26, 2009 (id. ¶¶ 3, 4).  Plaintiff Leslie Blundon operated a 2007 Harley Davidson with a rear tire, Dunlop D402, tire number MU85B16BW (id. ¶ 4).  Plaintiff Laura Heinen was riding on the motorcycle as a passenger (id. ¶ 5).  The accident occurred on Interstate 40 outside of Lake Havasu City, Arizona (id. ¶ 6).  In their Complaint,

2

plaintiffs allege that their tire was defective and failed, and this failure caused their accident (id. ¶ 7).  Plaintiffs specified their causes of action while defendant simplified the claims (compare id. ¶¶ 8-13 with Docket No. 131, Pls. Response to Def. Statement ¶¶ 8-13).  The plaintiffs here also made the same allegations of failure to warn that were made by the Griffith plaintiffs (Blundon, Docket No. 129, Def. Statement ¶¶ 14-18).

Plaintiffs purchased the tire as a replacement tire on September 3, 2008 (id. ¶ 19). Defendant contends that the tire sold to these plaintiffs had with it literature (id. ¶ 20), but plaintiff Blundon testified that he did not recall being given this literature when he purchased the tire but received the booklet when he purchased the motorcycle (Docket No. 131, Pls. Response to Def. Statement ¶ 20).  Defendant claims that the "Maintenance and Tire Care Booklet" (Docket No. 129, Ex. C) warned of the maximum load capacity for the tire (Docket No. 129, Def. Statement ¶ 21; but see Docket No. 131, Pls. Response to Def. Statement ¶ 21 (deny receiving this material at the time the tire was purchased)).  The sidewall of the tire was marked with warnings and instructions (Docket No. 129, Def. Statement ¶ 22).  The owner's manual for the Harley Davidson also included instructions and warnings concerning the gross vehicle weight rating and tire inflation pressure (id. ¶ 23); but plaintiffs claim that the original owner's manual for the motorcycle was not recoverable (Docket No. 131, Pls. Response to Def. Statement ¶ 23). Defendant argues that plaintiffs fail to identify a specific warning that should have been issued (Docket No. 129, Def. Statement ¶ 24), but plaintiffs argue that, due to the high number of D402 tire blow-outs, warnings should have been given to defendant's customers, suppliers and distributors concerning a possible manufacturing/design defect associated with that tire (Docket No. 131, Pls. Response to Def. Statement ¶ 24).  Plaintiffs also alleged that there was no

3

information provided by defendant which would have given any clear indication of the weight limit for the D402 tire (id.).

Defendant claims that plaintiffs have not disclosed an expert witness qualified to speak to the alleged lack of warning and/or inadequacy of existing warnings (compare Docket No. 129, Def. Statement ¶ 25 with Docket No. 131, Pls. Response to Def. Statement ¶ 25 (pointing to Gary Derian, P.E., as expert)).  Plaintiffs admit that they do not possess any documents that evidence an express warranty by defendant (Docket No. 129, Def. Statement ¶ 26).  Defendant notes that the warranty for the tire was a limited warranty only for coverage for replacement cost of the subject tire (id. ¶ 27) and not personal injury damages (id. ¶ 28).

Plaintiffs' Interrogatory answers claimed the value of post household services as a result of the accident (id. ¶¶ 29, 30) at an unspecified amount, but plaintiffs failed to produce receipts or other materials to document these expenses (id. ¶ 31).  They produced an economist who testified that he did not calculate a claim for past loss of household services (id. ¶ 32).

*Defendant's Arguments*

In its motions for summary judgment, defendant argues that plaintiffs' respective causes of action for design defect should be dismissed since plaintiffs announced in their Interrogatory answers that they were not claiming a design defect (e.g., Docket No. 129, Def. Memo. at 3). Defendant argues that plaintiffs' failure to warn causes of action should be dismissed since theses causes are duplicate of plaintiffs' manufacture defect claims (e.g., id., Def. Memo. at 3-5) and that there was no evidence that the accidents were caused by lack of product warnings (id., Def. Memo. at 6-10).  Next, defendant asserts that plaintiffs' causes of action for breach of express warranty should be dismissed because plaintiffs failed to produce evidence to support

these claims (id., Def. Memo. at 10-11).  Finally, defendant concludes that the claims of

plaintiffs for loss of past household services should be dismissed because they failed to produce

receipts or other evidence for these expenses (id., Def. Memo. at 12).

*Plaintiffs' Response*

      Plaintiffs in each case make similar arguments in response to defendant's motions.

Plaintiffs initially focus on their failure to warn claims, contending that the sufficiency of

warnings presented here is a fact-based inquiry, hence precluding summary judgment (Docket

No. 131, Pls. Response at 3).

*Defendant's Reply*

      Defendant counters that plaintiffs now concede that they are not pursuing design defect,

breach of express warranty, or past lost household services claims (Docket No. 132, Def. Reply

at 2).  Defendant argues that plaintiffs' failure to warn claims should be dismissed because they

have not set forth a specific warning that should have been provided but was not, that the failure

to warn claim is duplicative of the manufacturing defect claim (id. at 2, 3, 4).  Plaintiffs do not

contest that the warnings either were provided or explained how the warnings were inadequate

(id. at 2, 4-5, 5-6).

*Choice of Law*

      This Court then raised the issue of which jurisdiction's substantive law should apply to

plaintiffs' claims and the defenses raised herein (Docket No. 133).  Both parties agree on a few

key points.  First, they agree that the applicable jurisdictions are New Hampshire, Ohio, and

Arizona (with no one citing Tennessee).  Second, they agree (but for different reasons in detail)

that there are conflicts in these jurisdictions' law (as well as New York law) applicable to

plaintiffs' claims and defendant's defenses.  Plaintiffs argue that Arizona law should apply here since it is the site of the tort (Docket No. 136, Pls. Memo.).  Defendant counters that New Hampshire law, the state of residence of plaintiffs, should apply (Docket No. 137, Def. Letter at 4-6), but arguing that the choice of law is not pertinent to the issues pending in its motion for summary judgment in which it concludes that summary judgment "can be granted based on common fundamental principles of law" (id. at 8).  This Court then held that New Hampshire law applies here and ordered the parties to brief the substantive claims under that state's law (Docket No. 138).

*Blundon* Under New Hampshire Law

Plaintiffs argue that defendant's motion is essentially for partial summary judgment, since defendant was not moving against plaintiffs' claims for manufacturing defect (Docket No. 140, at 9).  Plaintiffs assert a claim against defendant for failure to warn about the potential for "overdeflection and underinflation" of the tire (id. at 3), that defendant should have warned of the maximum load capacity for its tire (id. at 3-4).  The "warning" defendant points to, some small writing on the tire, plaintiffs contend is insufficient (id. at 4-5).

Defendant argues that plaintiff fails to set forth a specific warning that should have been provided with the tire; they do not dispute that failure to warn claims are duplicative of manufacturing defect claims (Docket No. 139, at 2-3, 4-5).  Defendant contends that plaintiffs cannot meet the burden of proof on a failure to warn claim (id. at 5).  Alternatively, defendant states that it provided or referred plaintiffs to relevant warnings (id. at 6-7).

As for design defect, plaintiffs apply New Hampshire law (Docket No. 140 at 6-7, Mutual Pharmaceutical Co. v. Bartlett, 570 U.S. ___, ___, 133 S.Ct. 2466, 2474 (2013) (design

defect liability under New Hampshire law, at 2473)), and seek to revive this claim (id. at 1).

Defendant argues, however, that plaintiffs conceded that they were not pursuing a design defect

or breach of express warranty claims (Docket No. 139, Defs. Memo. at 2).

Defendant next argues, in its supplemental memorandum (Docket No. 141), that plaintiffs

are barred by judicial estoppel from now raising a design defect claim (id., Def. Supp'al Memo.

at 2-4).  Defendant contends that Federal Rule of Civil Procedure 37 precludes them from

providing evidence to support such a design defect claim where they failed to respond to defense

discovery requests on that issue (id. at 4-5), with that failure to produce is sanctionable under that

rule for the reasonable attorneys' fees for moving to compel (id. at 4 n.1; cf. Docket Nos. 104

(defense motion to compel), 116, Order terminating motions to compel upon resolution of the

parties of the discovery issues contained therein).  "Notably, plaintiffs have failed to supplement

their discovery responses to assert a design defect claim and provide the requisite details

supporting it" (Docket No. 141, Def. Supp'al Memo. at 5 n.2).  Plaintiffs argue that they can

reassert their otherwise abandoned design defect claim because of the application of New

Hampshire law (rather than New York law) (see Docket No. 140, Pls. Memo. at 1).  Defendant

counters that New Hampshire and New York law are similar regarding design defect claims and

thus plaintiffs lack a basis to revive the abandoned claim (Docket No. 141, Def. Supp'al Memo.

at 6-7).

Plaintiffs reply that judicial estoppel does not apply since there is no indication of judicial

acceptance of their original position to establish estoppel effect if they were to change that

position (Docket No. 143, Pls. Memo. at 1-2), New Hampshire v. Maine, 532 U.S. 742, 743

(2001) (judicial estoppel elements).  They note that the tire at issue was purchased not in New

Hampshire (as presumed by this Court) but in Tennessee (id. at 2 n.1), but they do not argue that Tennessee law applies.  Arguing New Hampshire law, plaintiffs claim that a design defect claim can be alleged without requiring plaintiffs to provide proof of foreseeable alternative design (as would be required under New York law) (id.at 2).  They conclude that there was in effect a change in law (from the parties presuming that New York law applied to this Court's choice of law declaration that New Hampshire law applied), thus there is no prejudice to defendant if plaintiffs change their position given this change in the applicable law (see id. at 5-6).

## DISCUSSION

I.      Summary Judgment Standards

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought,

however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); see also Demutis v. Sally Beauty Supply LLC, No. 09CV92, 2011 WL 1198197, at *3 (W.D.N.Y. Feb. 17, 2011) (Scott, Mag. J.) (Docket No. 119, Def. Memo. at 2-3).  The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

II.      Application

    A.      Choice of Law—A Coda

        1.      Potential Fifth Jurisdiction to Consider

Plaintiffs allege that they purchased the rear tire on September 3, 2008 (Docket No. 4, Notice of Removal Ex. A, State Compl. ¶ 9), but did not state in the Complaint where it was purchased.  In a footnote to their supplemental briefing on defendant's summary judgment motion (Docket No. 143, Pls. Memo. at 2 n.1), plaintiffs state that they purchased the tire from Tennessee (cf. Docket No. 131, Pls. Counter-Statement ¶ 20).  Leslie Blundon testified in his deposition that they purchased the tire in Tennessee (Docket No. 131, Pls. Atty. Decl. ¶ 7, Ex. A, Blundon EBT Tr. at 94-95).  Defendant, in arguing that New Hampshire law should apply also assumed that the tire at issue was "shipped and sold" in New Hampshire as well as being shipped and sold elsewhere in the country (Docket No. 137, Def. Letter at 5).  Neither side noted that Tennessee was a potential jurisdiction, since that is where plaintiffs purchased the tire, and thus no one has presented whether Tennessee[1] law differs from New Hampshire law (in particular on the elements of a design defect claim).

---

[1]Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-102(6); see Frausto v. Cooper Tire & Rubber Co., No. 3-12-0761, 2014 U.S. Dist. LEXIS 18394, at *4 (M.D. Tenn. Feb. 13, 2014).  Under that statute, plaintiff needs to prove that the product was defective and unreasonably dangerous at the time it left the manufacturer, Maness v. Boston Scientific, 751 F.Supp.2d 962, 967 (E.D. Tenn. 2010) (citations omitted).  Compare Browder v. Pettigrew, 541 S.W.2d 402, 405-06 (Tenn. 1976), "a product is defective if it is not fit for the ordinary purposes for which such articles are used and sold. . . . Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product."  See Bradley v. Ameristep, Inc., 800 F.3d 205, 210 (6th Cir. 2015) (holding expert testimony is not the only way to prove manufacturing or design defect claim under Tennessee law); but cf. Pride v. BIC Corp., 218 F.3d 566, 580 (6th Cir. 2000).

At least one district court has held that, under Tennessee law, that a plaintiff is not

In considering defendant's summary judgment motion, the issue of choice of law arose and this Court considered whether the laws of four jurisdictions (New York, Ohio, New Hampshire, or Arizona) applied to this case (Docket No. 138, Order of Oct. 13, 2015; see also Docket No. 133, Order of Aug. 27, 2015, seeking briefing on which jurisdiction's law applied); Tennessee law was not raised.  New York (the site of manufacture of the tire) and Ohio (defendant's state of incorporation) were excluded from consideration, see Burnett v. Columbus McKinnon Corp., 69 A.D.2d 58, 59-60, 887 N.Y.S.2d 405, 407-08 (4th Dep't 2009) (place of manufacture is not situs for tort for products liability action) (Docket No. 138, Order at 4), and Arizona (the site of the accident and proffered by plaintiffs as the relevant jurisdiction) also was excluded because it was a fortuitous[2] location, see Schultz v. Boy Scouts of Am., 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 95-96 (1985).  As previously held (id. at 8, 10, 4-10), New Hampshire law applies.

        2.      Under New York Choice of Law Rules, How New Hampshire Law Applies

Applying New York choice of law rules, in particular Neumeier v. Kuehner, 31 N.Y.2d 131, 335 N.Y.S.2d 64 (1972), and its third rule that where the parties are from different

---

required production of a prototype alternative design in order to make out a prima facie case, Martin v. Michelin N. Am., Inc., 92 F. Supp. 2d 745, 753 (E.D. Tenn. 2000) (quoting Restatement (Third) of Torts § 2 cmt. f (1998)); see Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 432-33 (6th Cir. 2007).

[2]Given that torts are fortuitously located (especially torts involving mobile objects, such as vehicle tires), that no party consciously chooses where to commit the tort based upon its laws, interest analysis is flawed in treating torts like an affirmative decision, thus the "interest" of a particular jurisdiction in having its law applied to the accident that occurred.  The cleaner result would be lex loci delicti as was the rule in this state before interest analysis took over and plaintiffs would have Arizona law applied.  But as a federal court bound by the forum state's choice of law rules, we are governed by New York's policy choice, including interest analysis.

jurisdictions (plaintiffs New Hampshire, defendant Ohio corporation) and the tort occurred in a different jurisdiction, the law of the place where the tort occurred generally applies, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70 (in automobile accident case); see also Schultz, supra, 65 N.Y.2d at 198, 491 N.Y.S.2d at 96 (law of the site of the incident).

The issue, then, in this products liability action is where the tort occurred, or the "place of the wrong". Then-Chief Judge Larimer, in Smith v. Bell Sports, 934 F. Supp. 70, 76-77 (W.D.N.Y. 1996), distinguished the site of the accident (there, Watkins Glen, New York, in a race car crash with injuries alleged from defect in driver's helmet) from the site of the tortious conduct (defective design and manufacture of the helmet, presumably in defendant's principal place of business, Illinois). Judge Larimer then found that plaintiff's domicile of New Jersey had the paramount interest to have its law apply to plaintiff's claims, id. at 77.

The "place of the wrong" for lex loci delicti rule for product liability cases (particularly for mobile products, such as tires or airplanes) "is considered to be the place where the last event necessary to make the actor liable occurred," Pescatore v. Pan Am. World Airways, 97 F.3d 1, 13 (2d Cir. 1996) (choice of law from Lockerbie air disaster over Scotland, court applying plaintiff's domicile of Ohio as relevant law for damages, applying the place of the wrong to reject applying law of accident site Scotland) (quoting Schultz, supra, 65 N.Y.2d at 195, 491 N.Y.S2d at 94); Champlain Enters. v. United States, 945 F. Supp. 468, 473 (N.D.N.Y. 1996). In Pescatore, the Second Circuit applied interest analysis concepts and concluded that Ohio had greater interest in applying its law to this claim than New York since plaintiff's losses, loss of society, financial support, and services, occurred in Ohio, that an international airline would expect to have Ohioans on board, and New York's interests (in imposition of punitive damages

12

on corporations) was not applicable there, 97 F.3d at 14.  The last tortious event there was the financial losses incurred in Ohio.  Again (see Docket No. 138, Order at 9), in Champlain Enterprises, supra, 945 F. Supp. at 473-74, New York (the site of the air crash and plaintiff's state of corporation) had "tenuous" contacts and its interest in applying its law were "limited" because its interests were only in promoting air safety, "but that interest is not advanced by the assessment of the loss suffered by this plaintiff," id. at 473.  Also, the place of the wrong in that case, the manufacture of the aircraft, occurred in Kansas, id., leading that court to conclude that Kansas law applied, id. at 473-74.

In the case at bar, this Court initially held that New Hampshire law applied because it was plaintiffs' state of domicile and it was assumed by the Court that they purchased the tire in that domicile (Docket No. 138, Order at 2-3, 6-9, 8; see also Docket No. 137, Def. Letter at 6), with the last tortious act being the purchase of the defective product.  Noting that in products liability actions, "New York gives greater weight to the law of the victim's domicile," (Docket No. 138, Order at 8 (internal citations omitted)), see also Pescatore, supra, 97 F.3d at 13-14, this Court then presumed that plaintiffs purchased the rear tire in that domicile.  "Applying in Blundon New York interest analysis in this Neumeier rule 3 situation for a products liability action," this Court held that "the injury here occurred potentially in three places:  where the allegedly defective tires were manufactured (New York); where those tires were purchased by plaintiffs (New Hampshire); or where the accident occurred with the tires (Arizona)."  (Id.)  But that purchase in fact was made in Tennessee.  This fact causes further reflection on the law of appropriate jurisdiction for this case.

13

Despite entry of a fifth potential jurisdiction, the interests and injuries still point to New Hampshire, rather than Tennessee or other states.  As fortuitously as plaintiffs were traveling in Arizona, they fortuitously purchased the replacement rear tire in Tennessee (cf. Docket No. 137, Def. Letter at 5).  Their economic and non-economic damages still occurred in New Hampshire (id.).  No party is now urging that Tennessee has any interest in having its law applied in this case merely because plaintiffs purchased an allegedly defective product in that state.  Finally, no one has pointed to differences in Tennessee law from that of New Hampshire regarding design defect (that is, the need for proof of alternative design, that defendant raises under New York law, cf. Docket No. 143, Pls. Memo. at 3-4).  Thus, this Court continues to apply **New Hampshire law** to plaintiffs' claims and turns next to plaintiffs' attempt to revive their design defect claims.

B.      Plaintiffs' Design Defect Claims

Apparently applying New York law, plaintiffs at first abandoned a design defect claim, answering Interrogatories that they were not asserting that claim (Docket No. 129, Def. Statement ¶ 14; Docket No. 129, Def. Atty. Decl., Ex. C, at 5; Docket No. 131, Pls. Response to Def. Statement ¶ 14 (admission)).  Now applying New Hampshire law, plaintiffs argue that they answered that way because, under New York law, they lack a design defect claim (see Docket No. 140, Pls. Memo. at 1; cf. Docket No. 141, Def. Memo. at 6), but if New Hampshire applies, they would have such a claim (Docket No. 140, Pls. Memo. at 1, 6-7), cf. Mutual Pharmaceutical Co., supra, 133 S.Ct. at 2474.  Defendant counters with legal objections to plaintiffs changing their mind (judicial estoppel, Federal Rule of Civil Procedure 37 preclusion, and the fact that

there is no basis for a design defect claim under either New Hampshire or New York law, Docket No. 141, Def. Memo. at 2-4, 4-5, 6-7).

For a motion for summary judgment, opposing plaintiffs need to submit materials in the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" to support the assertion that facts are genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A).  In the supplemental papers, plaintiffs offer their expert's report (Docket No. 143, Pls. Memo. at 2, Ex. A) and excerpts from their testimony (id. at 3, Ex. B), to support a design defect claim under New Hampshire law.  They have not presented evidence (such as an alternative design that should have been made for a motorcycle tire that was to be installed on a larger motorcycle ridden by "larger" riders), arguing that such proof is unnecessary under New Hampshire law (id. at 3-5).

First, judicial estoppel does not prevent plaintiffs from reviving a design defect claim.  As noted by the Supreme Court in New Hampshire v. Maine, supra, 532 U.S. at 743, factors include the party's later position being inconsistent with its former; that there was judicial acceptance of the earlier position, and whether that party derives an advantage from the change in position.  Here, the change in position was external to the parties; both sides in effect started by arguing that New York law applied when this Court posed the choice of law question (cf. Docket No. 143, Pls. Memo. at 5), with New York law requiring plaintiffs to prove the existence of an alternative design to sustain a design defect claim (id.).  By inviting the parties to brief the issue now under New Hampshire law, there was no reliance of this Court upon plaintiffs' initial abandonment of a claim that they thought was not viable under New York law.  With the moving target of which jurisdiction's substantive law applies to this case, plaintiffs should have the

opportunity to plead and prove a design defect claim under the applicable jurisdiction's law, here New Hampshire's.

Plaintiffs here in supplement present their expert's report as to causation (id. at 2, Ex. A) and their testimony that they checked the air pressure on the morning of the incident (id., Ex. B). If two riders riding on a Harley Davidson motorcycle at highway speed can cause defendant's rear tire to fail without warning, plaintiffs conclude that the tire was improperly designed (id. at 4). Applying New Hampshire law for design defect, see Mutual Pharmaceutical Co., supra, 133 S.Ct. at 2475, that state does not require plaintiffs to prove that an alternative design exists (id. at 4-5).

Defendant's motion (Docket No. 129) on this claim should be **denied**. But, as defendant notes (Docket No. 141, 4-5), plaintiffs have not presented discovery on this claim. The reason for that is stated above, that both sides relied upon New York law when, in fact, New Hampshire law is in play. Therefore, defendant is entitled to discovery on this claim that was not provided when plaintiffs initially answered Interrogatories and other discovery demands. Although there has been motion practice regarding discovery in this case (see Docket Nos. 104 (defense motion to compel), 24 (production of tire and rim), 22 (plaintiffs' motion to compel), 116, Order of June 23, 2014, announcing parties' agreement on defense motion to compel (No. 104), 47, Order of Nov. 9, 2012, 52, Order of Jan. 8, 2013, denying objections Order of Nov. 9, 2012; see also Docket Nos. 25, 26 (defense motions for protective Orders), 53, 55 (protective Order motions), 58 (motion for protective Order), 83, 89 (plaintiffs' motion to strike), 98, Order of Sept. 26, 2013, announcing resolution of then outstanding discovery motions and issues), there was no motion filed regarding plaintiffs' design defect claim that plaintiffs did not answer. Instead and

under their understanding of the applicable law, plaintiffs abandoned that claim and so responded in their discovery responses.  Thus, seeking Rule 37 sanctions (such as preclusion or recovery of reasonable discovery motion expenses, <u>see</u> Docket No. 141, Def. Memo. at 5) is premature. Also, plaintiffs need to address the present inconsistency between their expert's report (presented in their supplemental papers to justify a design defect claim) and his testimony denying a design defect claim (Docket No. 131, Gary Derian Expert Dep. ¶ 3 (stating his understanding that the claim was only a strict liability manufacturing defect claim and not one for design defect)).  Both sides may benefit from added discovery on this revived claim.  As a result, the denial of defendant's current motion for summary judgment should be **without prejudice** upon completion of this discovery.  As indicated below, the time for conducting this limited discovery will need to be set, after this motion for summary judgment is disposed of finally.

      C.      Plaintiffs' Failure to Warn Causes of Action

      Neither side discusses the failure to warn claim under the law of New Hampshire (<u>see</u> Docket No. 138; <u>cf.</u> Docket No. 129, Def. Memo. at 3-5 (not citing New Hampshire law); Docket No. 131, Pls. Memo. at 3 (citing only New York law)).  This differs from the parallel <u>Griffith</u> case, where both sides argued the viability of a failure to warn claim under applicable California law (<u>see</u> <u>Griffith</u>, Docket No. 132, Report & Rec. at 15).  Thus, it is unclear in <u>Blundon</u> whether the warnings furnished by defendant are sufficient under relevant <u>New Hampshire</u> law.  Defendant has the burden as summary judgment movant to show that it is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); here, that it was entitled to judgment as a matter of New Hampshire law (or that the principles cited in the earlier motion papers, based on New York and other jurisdictions' laws, would be applicable in New

Hampshire).  Therefore, defendant's motion for summary judgment as to this claim should be **denied**.

       D.      Plaintiffs' Breach of Express of Warranty Claims

Plaintiffs assert in their fifth and sixth causes of action breaches of express warranty. Defendant argues that plaintiffs failed to submit sufficient evidence for these claims (Docket No. 129, Def. Memo. at 10-11) and plaintiffs agree that this claim is not applicable or sustainable and withdraws them (Docket No. 131, Pls. Memo. at 1).  Unlike the design defect claims, they have not changed their position despite the application of New Hampshire law.  Thus, defendant's motion (Docket No. 129) for summary judgment on this claim should be **granted**.

       E.      Plaintiffs' Claim for Lost Household Services

Finally, defendant argues that plaintiffs have not substantiated their loss of past household services claim for their seventh and eighth causes of action.  Plaintiffs do not contest this point (Docket No. 131, Pls. Memo. at 1) and have not changed their position with the change of law discussed above.  Defendant's motion for summary judgment (Docket No. 129) on this ground also should be **granted**.

III.     What is Left Following this Motion

If this Report is adopted without amendment, what would remain for further disposition and eventual trial is plaintiffs' breach of implied warranty (in their fifth and sixth causes of action); their second cause of action for manufacture defect (see Docket No. 140, Pls. Memo. at 9); their strict liability claims for manufacturing defect contained in their third and fourth causes of action; and their failure to warn claims.  Also remaining would be plaintiffs' design defect

claim (assuming no subsequent defense motion for summary judgment after further discovery is concluded).

With the discovery indicated above, the amended Scheduling Order would have to be amended to allow time to conduct this limited discovery.  Upon formal disposition of the summary judgment motion (by Objection or by adoption by Judge Skretny), the Scheduling Order will need to be amended.

## CONCLUSION

For the reasons stated in that Report, it is recommended that defendant's pending partial summary judgment motion in this case (Docket No. 129) should be **granted in part, denied in part**.  Upon formal action on defendant's motion, the Scheduling Order may need to be amended to restart the discovery period for the limited purposes discussed in this Report.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
December 16, 2015

20