UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE BLUNDON,
LAURA HEINEN,

                                    Plaintiffs,                    **Hon. Hugh B. Scott**


                                                                   **11CV990S**

                       v.                                          **Report
                                                                   &
                                                                   Recommendation**


GOODYEAR DUNLOP TIRES NORTH
AMERICA,

                                    Defendant.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 86).  The instant matter before the Court is the latest motion of defendant Goodyear

Dunlop Tires North America[1] (Docket No. 154) for partial summary judgment seeking dismissal

of two claims.  This motion is similar to defendant's motion for partial summary judgment in

Griffith, et al. v. Goodyear Tires North America, Case No. 11CV761 ("Griffith"), Docket

No. 144.

        Defendant initially moved for summary judgment in this case on June 25, 2015 (Docket

No. 129).  This Court rendered a Report and Recommendation (Docket No. 144) which

recommended granting in part, denying in part that motion.  Applying New Hampshire

_____

        [1]Defendant noted the proper corporate name is now Sumitomo Rubber USA, LLC, see
Docket No. 153.  For consistency with prior proceedings, however, defendant will be referred to
by its former name.

substantive law (see Docket No. 138, Order), denial was recommended for judgment against

plaintiffs' claims for design defect and failure to warn, to allow plaintiffs to conduct limited

discovery as to these claims (Docket No. 144, Report & Rec. at 6, 10-14, 14-17, 17-18).   After

Objections to that Report (Docket No. 145), Judge William Skretny accepted the Report and

remanded the case for limited discovery on those two claims (Docket No. 149).   Familiarity with

this Report, Judge Skretny's Order, and prior proceedings are presumed.

   After discovery (see Docket Nos. 150, 152, amended Scheduling Orders), defendant filed

the present motion for summary judgment (Docket No. 154[2]).   Responses were due by July 13,

2016, with any reply due by August 1, 2016 (Docket No. 155).   Plaintiffs submitted their

opposition Memorandum of Law and their attorney's declaration with exhibits (Docket No. 157),

while defendant replied with its Reply Memorandum of Law (Docket No. 158).   This motion

was deemed submitted (without oral argument) on August 1, 2016.

## BACKGROUND

   Both this action and Griffith arose from motorcycle accidents where the rear tires

(manufactured by defendant) of plaintiffs' respective motorcycles blew out.   Plaintiffs in

Blundon are residents of New Hampshire who had an accident in Arizona on their motorcycle.

Defendant is an Ohio corporation with a plant in the Western District of New York.

   According to so much of the uncontested portions of defendant's initial Statement of

Material Facts in this case (Docket No. 129), plaintiffs commenced this action due to a

motorcycle accident on September 26, 2009 (id. ¶ 4).   Plaintiff Leslie Blundon operated a

---

[2]In support of this motion, defendant submits its attorney's Declaration with exhibits,
Docket No. 154, Statement of Undisputed Facts, id., and Memorandum of Law, id., and reply
papers noted below.

2007 Harley Davidson with a rear tire, Dunlop D402, tire number MU85B16BW (the "subject tire") (id. ¶ 4).  Plaintiff Laura Heinen was riding on the motorcycle as a passenger (id. ¶ 5).  The accident occurred on Interstate 40 outside of Lake Havasu City, Arizona (id. ¶ 6).  In their Complaint, plaintiffs allege that their tire was defective and failed, and this failure caused their accident (id. ¶ 7).  Plaintiffs specified their causes of action while defendant simplified the claims (compare id. ¶¶ 8-13 with Docket No. 131, Pls. Response to Def. Statement ¶¶ 8-13).  The plaintiffs here also made the same allegations of failure to warn that were made by the Griffith plaintiffs (Blundon, Docket No. 129, Def. Statement ¶¶ 14-18).

Plaintiffs purchased the tire as a replacement tire on September 3, 2008 (id. ¶ 19). Defendant contends that the tire sold to these plaintiffs had with it maintenance and safety literature (id. ¶ 20), but plaintiff Blundon testified that he did not recall being given this literature when he purchased the tire but received the booklet when he purchased the motorcycle (Docket No. 131, Pls. Response to Def. Statement ¶ 20).  Defendant claims that the "Maintenance and Tire Care Booklet" (Docket No. 129, Ex. C) warned of the maximum load capacity for the tire (Docket No. 129, Def. Statement ¶ 21; but see Docket No. 131, Pls. Response to Def. Statement ¶ 21 (denying receiving this material at the time the tire was purchased)).  The sidewall of the tire was marked with warnings and instructions (Docket No. 129, Def. Statement ¶ 22).  The owner's manual for the Harley Davidson also included instructions and warnings concerning the gross vehicle weight rating and tire inflation pressure (id. ¶ 23); but plaintiffs claim that the original owner's manual for the motorcycle was not recoverable (Docket No. 131, Pls. Response to Def. Statement ¶ 23).  Defendant argues that plaintiffs fail to identify a specific warning that should have been issued (Docket No. 129, Def. Statement ¶ 24), but plaintiffs argue that, due to

3

the high number of D402 tire blow-outs, warnings should have been given to defendant's customers, suppliers and distributors concerning a possible manufacturing/design defect associated with that tire (Docket No. 131, Pls. Response to Def. Statement ¶ 24).  Plaintiffs also alleged that there was no information provided by defendant which would have given any clear indication of the weight limit for the D402 tire (id.).

In its motion for summary judgment, defendant argues that plaintiffs' cause of action for design defect should be dismissed since plaintiffs announced in their Interrogatory answer that they were not claiming a design defect (e.g., Docket No. 129, Def. Memo. at 3).

Applying New Hampshire law to plaintiffs' claims (Docket No. 138, Order of Oct. 13, 2015; see Docket No. 144, Report & Rec. at 5-6), this Court recommended that judgment should be denied on both the design defect and failure to warn claims because plaintiffs needed discovery to show evidence for these claims, with denial of summary judgment without prejudice to defendant renewing this motion upon completion of that discovery (Docket No. 144, Report & Rec. at 110-14, 14-18)[3].  In adopting this Report, Judge Skretny dismissed as abandoned plaintiffs' claims for breach of express warranty and loss of household services (Docket No. 149).  The parties were given until March 25, 2016, to complete discovery on the design defect and failure to warn claims and renew motions by June 10, 2016 (Docket No. 152; see Docket No. 150).

---

[3]The Report noted that, assuming adoption in its entirety, plaintiffs would have remaining their claims for breach of implied warrant (the fifth and sixth causes of action), manufacture defect (the second cause of action), and strict liability claims for manufacturing defect (in the third and fourth causes of action), Docket No. 144, Report & Rec. at 18-19, adopted, Docket No. 149, Order.

4

*Defendant's Second Motion for Summary Judgment*

Defendant now moves to dismiss plaintiffs' design defect and failure to warn claims, contending that plaintiffs still have not provided sufficient evidence for a design defect claim despite additional discovery (Docket No. 154, Def. Memo. at 11-19).  Defendant reaffirms its initial argument that plaintiffs did not make a claim for design defect and, after the limited discovery, they had not explained the inconsistency between their expert's initial declaration denying that claim and their present assertion of that claim (id. at 11-12).  Further, if plaintiffs' expert had seen a design defect, he would have pointed it out and the expert did not do that here (id. at 12-13).  Plaintiffs' expert also did not re-examine the subject tire during this extended discovery period (id. at 13).  Plaintiffs now argue that the tire could have been designed for higher psi capabilities such as 50 psi (id. at 14; Docket No. 154, Def. Atty. Decl., Ex. A, at 3).  But plaintiffs fail to show that the tire's designed psi capability was the cause of the accident (Docket No. 154, Def. Memo. at 15).  The load on the tire did not exceed the 1,100 pound capacity; hence defendant concludes that there is no design defect (id.).  Defendant also rejects plaintiffs' expert methodology in concluding that the tire was defectively designed (id. at 16-18).

Plaintiffs also argue that the tire was defectively designed because of the adhesive used in its construction (Docket No. 154, Def. Atty. Decl., Ex. A, at 2; Docket No. 154, Def. Memo. at 18).  Defendant responds that there is no expert support for plaintiffs' argument and that plaintiffs' contentions here require expert knowledge (Docket No. 154, Def. Memo. at 18).

Next, defendant argues that plaintiffs cannot sustain a failure to warn claim under New Hampshire law (id. at 19-24) and that their failure to warn claim is duplicative of their

manufacturing defect claim (id. at 24-25).  Furthermore, defendant contends that plaintiffs never alleged a failure to warn claim in their Complaint (id. at 25).

Plaintiffs respond that defendant has not put forth any evidence that the subject tire was properly designed (Docket No. 157, Pls. Atty. Decl. ¶ 10) or adequate warnings were given (id.). Their expert testified that the tire had a manufacturing defect in the form of inadequate adhesive (id. ¶ 11) and was underinflated and overloaded, a design defect under New Hampshire law (id. ¶ 12; Docket No. 157, Pls. Memo. at 3-7).  They point to expert testimony from another expert that defendant was aware of riders of motorcycles with defendant's tires maximizing the load on those tires (Docket No. 157, Pls. Memo. at 6).

Refuting the anticipated "overdeflected and underinflated" defense, plaintiffs counter that this defense raises issues of material fact as to the inflation of the subject tire (Docket No. 157, Pls. Memo. at 2).  These issues of fact, in turn, impact their design defect claim (should the tire have been designed different in light of defendant's knowledge of the potential for overloading) and failure to adequately warn (the absence of warning about the maximum weight for the tire) claim (id.).  They pose jury questions whether the tire blow out was caused by a lack of adhesive on the tire cords thereby constituting a manufacturing defect; whether the tire was properly designed given defendant's knowledge of maximum loads the tire would bear; whether warnings were appropriate to the consumers of that risk; and what information should have been given to the consumers which would have conveyed the safe amount of weight the tire could bear (id. at 3).  Regarding overdeflection, plaintiffs' expert, Gary Derian, testified that it should have been accounted for in the design of the tire and failure to do that created a defect (id. at 7; Docket No. 154, Def. Atty. Decl., Ex. B, Derian EBT Tr. at 58, 59).

**DISCUSSION**

I.      Summary Judgment Standards and Applicable Substantive Law

       A.      Summary Judgment

As previously noted in this case (Docket No. 144, Report & Rec. at 8-9), summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); see also

<u>Demutis v. Sally Beauty Supply LLC</u>, No. 09CV92, 2011 WL 1198197, at *3 (W.D.N.Y. Feb.

17, 2011) (Scott, Mag. J.) (Docket No. 119, Def. Memo. at 2-3).  The opponent to summary

judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for

specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

       The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, <u>id.</u>

R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, <u>id.</u> R. 56(a)(2).  Each numbered paragraph

in the movant's statement will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opponent's statement, <u>id.</u>  Each statement of material

fact is to contain citations to admissible evidence to support the factual statements and all cited

authority is to be separately submitted as an appendix to that statement, <u>id.</u> R. 56(a)(3).

       B.    Choice of Law

       As previously held (Docket No. 144, Report & Rec. at 10-14; Docket No. 138, Order),

New Hampshire substantive law applies to plaintiffs' claims.  Under New Hampshire law,

plaintiffs need not prove an alternative design exists to support his or her design defect claim,

<u>Mutual Pharmaceutical Co. v. Bartlett</u>, 570 U.S. ___, ___, 133 S.Ct. 2466, 2475 (2013) (applying

New Hampshire law).

C.      New Hampshire Law on Design Defect and Failure to Warn

1.      New Hampshire Law on Design Defect

As recognized by the United States Supreme Court in Mutual Pharmaceutical Co. v.

Bartlett, supra, 133 S.Ct. at 2473-74, "the New Hampshire Supreme Court has consistently held

that the manufacturer of a product has a 'duty to design his product reasonably safely for the uses

which he can foresee'" (quoting Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 809, 395 A.2d

843, 847 (1978); citing Chellman v. Saab-Scania AB, 138 N.H. 73, 78, 637 A.2d 148, 150

(1993)) (see Docket No. 157, Pls. Memo. at 3).   "New Hampshire requires manufacturers to

ensure that the products they design, manufacture, and sell are not 'unreasonably dangerous,'"

Mutual Pharm., supra, 133 S.Ct. at 2474.   The Mutual Pharmaceutical Court then noted that

"New Hampshire imposes design-defect liability only where 'the design of the product created a

defective condition unreasonably dangerous to the user.'   Vautour v. Body Masters Sports

Industries, Inc., 147 N.H. 150, 153, 784 A.2d 1178, 1181 (2001); Chellman, supra, [138 N.H.] at

77, 637 A.2d, at 150," Mutual Pharm., supra, 133 S.Ct. at 2474 (see Docket No. 154, Def.

Memo. at 11).   "A product is defectively designed when it 'is manufactured in conformity with

the intended design but the design itself poses unreasonable dangers to consumers,'" Vautour,

supra, 147 N.H. at 153, 784 A.2d at 1181.

To prevail under New Hampshire law, the plaintiffs need to prove that the design of the

product created the defective condition, the condition existed when the product was sold, the use

of the product was reasonably foreseeable, and the condition caused their injury, see Vautour,

supra, 147 N.H. at 153-154, 784 A.2d at 1181 (Docket No. 158, Def. Reply Memo. at 3); see

also Chellman, supra, 138 N.H. at 77, 637 A.2d at 150.   "To determine whether a product is

'unreasonably dangerous,' the New Hampshire Supreme Court employs a 'risk-utility approach' under which 'a product is defective as designed if the magnitude of the danger outweighs the utility of the product.' Vautour, supra, [147 N.H.] at 154, 784 A.2d, at 1182 (internal quotation marks omitted).  That risk-utility approach requires a 'multifaceted balancing process involving evaluation of many conflicting factors.' Ibid.," Mutual Pharm., supra, 133 S.Ct. at 2474 (citations omitted) (see Docket No. 157, Pls. Memo. at 3-4).

A manufacturing defect is different.  As the New Hampshire Supreme Court held in Thibault, supra, 118 N.H. at 807, 395 A.2d at 846, a manufacturing defect is "where the defect is an accidental variation caused by a mistake in the manufacturing process; that is, where the product does not 'conform to the great majority of products manufactured in accordance with that design.'" [James A. Henderson, Jr.], Judicial Review of Manufacturer's Conscious Design Choices:  The Limits of Adjudication, 73 Colum. L. Rev. 1531, 1543 [(1973)]," id. (citations omitted), where as "a design defect occurs when the product is manufactured in conformity with the intended design but the design itself poses unreasonable dangers to the consumer. Henderson, supra at 1543," Thibault, supra, 118 N.H. at 807, 395 A.2d at 846.

2.      New Hampshire Law on Failure to Warn

In New Hampshire, "the duty to warn is part of the general duty to design, manufacture and sell products that are reasonably safe for their foreseeable uses," Chellman, supra, 138 N.H. at 78, 637 A.2d at 150 (Docket No. 157, Pls. Memo. at 12).  "[T]he absence of a warning may be relevant in determining whether or not a product is defectively designed and unreasonably dangerous," id.  Under New Hampshire law, plaintiffs need to show that defendant did not provide adequate warning of non-obvious risks associated with the foreseeable use of the subject

tire, and that the lack of warning was the proximate cause of their injuries, see Collins v. The Tool Exchange LLC, No. Civ. 01-302-M, 2002 WL 31395929, at *1-2 (D.N.H. Oct. 16, 2002); Brookline Sch. Dist. v. Bird, Inc., 142 N.H. 352, 356, 703 A.2d 258, 261 (1997) (Docket No. 154, Def. Memo. at 19-20).  Plaintiffs have the burden of proving the inadequacy of the warnings, Bartlett v. Mutual Pharm. Co., 731 F. Supp. 2d 135, 144 (D.N.H. 2010) (motions for summary judgment, see id. at 141), subsequent proceedings, Mutual Pharm., supra, 133 S.Ct. 2466 (2013).

II.     Application

        Both sides place the initial burden upon their respective opponent to justify judgment in their favor.  Defendant's argument centers on plaintiffs' inability to prove either a design defect or a failure to warn, while plaintiffs counter that defendant (as summary judgment movant) fails to establish that there were no issues of fact as to whether the tire was properly designed or that adequate warnings were given for its use (compare Docket No. 154, Def. Memo. at 11, 19, with Docket No. 157, Pls. Atty. Decl. ¶ 10).  Plaintiffs misstate defendant's burden; defendant only needs to show entitlement to judgment as a matter of law; that is, they need to establish that there is no material issue of fact and that defendant should prevail as a matter of law, Fed. R. Civ. P. 56(c) (Docket No. 157, Pls. Memo. at 1-2).  In this context, defendant does not have to show that the tire was properly designed or the warnings were adequate to meet either procedural burden. Absent a contention that they need still more discovery before they could respond to defendant's latest motion, plaintiffs as opponents of this summary judgment motion have the burden of showing that there exist issues of material fact as to the design defect or deficiencies in the warning for their claims in order for this motion to be denied.

11

A.      Design Defect

For a design defect claim, the first element under New Hampshire tort law is at issue:
whether the "design of the product created a defective condition unreasonably dangerous to the
user," Vautour, supra, 147 N.H. at 153, 784 A.2d at 1181.  The remaining elements depend upon
what the alleged defect was.  One possible defect argued by plaintiffs (through their expert's
testimony) was that the subject tire (designed for up to 40 psi) could have been designed to
withstand up to 50 psi, but the subject tire was not near its maximum load at the time of the
accident (Docket No. 154, Def. Atty. Decl. Ex. B, Tr. at 53).  As for this defect, it existed at the
time the tire was sold (since the tire was not designed to withstand 50 psi but only up to 40 psi).
The use of the tire (regardless of the theory of defect) was reasonably foreseeable; there is no
claim that plaintiffs abused the tire and they used the tire in its ordinary use.  As for causation,
this is where this theory of defect fails.  Plaintiffs' expert statement, that the tire was not at
maximum load at the time of the accident (id.; Docket No. 154, Def. Supp'al Statement ¶ 23; see
Docket No. 157, Pls. Response to Statement ¶ 23 (agreeing with paragraph)), does not mean that
the failure to design the tire to withstand more pressure was the cause for plaintiffs' accident.
The point is whether that tire was designed to withstand the load it was bearing.  Thus, on this
defect theory, plaintiffs fail to provide evidence for the first and fourth elements under New
Hampshire law.

An alternative defect theory plaintiffs propose was that the manufacturing process (or the
design thereof) was defective, since insufficient adhesive was applied to the cords in the subject
tire.  Plaintiffs' expert's claim that the design of the manufacturing process caused their injury
(essentially, that the lack of enough adhesive on the cords caused the accident and that the

amount of adhesive was the design flaw), plaintiffs present no evidence that defendant set forth

the specifications for the amount of adhesive to be used as the design for the manufacturing

process for the tire.  All that is presented is the expert's speculation that there was insufficient

adhesive and nothing more about the decision making process leading to that amount of adhesive

used.  Plaintiffs' expert did not testify as to the optimal amount of adhesive and admitted that he

did not witness the dipping process (which occurred in Vietnam) and that he could not testify to

the design of the manufacturing process (Docket No. 154, Def. Supp'al Statement ¶ 26, id., Def.

Atty. Decl., Ex. B, Tr. at 111).  Plaintiff argue that Derian testified that defendant failed to

monitor the dipping process (Docket No. 157, Pls. Statement ¶ 26; Docket No. 154, Def. Atty.

Decl., Ex. B, Tr. at 110-11), which he termed a manufacturing defect (Docket No. 154, Def.

Atty. Decl., Ex. B, Tr. at 111).  Derian stated that he did not have an opinion on the build

specifications for the tire but concluded that "the process was defective, because it allowed the

gap in the adhesive dip" (id., Tr. at 110).  It is not clear whether this tire was an aberration (hence

a manufacturing defect) or the product of a design choice.  The actual amount of adhesive

applied is an example of a manufacturing defect claim.  Applying the elements under New

Hampshire law, this theory fails the first element, since this theory is a manufacturing claim

rather than the failure of design, as plaintiffs' expert explained (Docket No. 154, Def. Atty.

Decl., Ex. B, Tr. at 116 (Derian testifying that the adhesive dip was a manufacturing defect, but

if allowed in the manufacturing process, then the design of the manufacturing process was

defective), 119-21; Docket No. 158, Def. Reply Memo. at 4).  New Hampshire recognizes design

defect and manufacturing defect as two distinct forms of strict liability, Mutual Pharm., supra,

133 S.Ct. at 2487.  Plaintiffs here conflate manufacturing defects (inadequate adhesive applied in

manufacturing) with design defect (that is, the tire is designed to have a percentage of adhesive applied) without specifying the proper amount or consistency of adhesive.  As plaintiffs' note in their response (see Docket No. 157, Pls. Memo. at 12), they have asserted a distinct manufacturing defect claim, which may include the contentions surrounding the amount of adhesive used.  As a design defect theory, the manufacturing process fails to state a claim.

Plaintiffs' design defect claim **should be dismissed** and defendant's motion for judgment on this claim (Docket No. 154) **should be granted**.

B.     Failure to Warn

Defendant raises several grounds for dismissing a failure to warn claim (e.g., Docket No. 139, Def. Further Memo. at 2-3; Docket No. 154, Def. Memo. at 22-24):  plaintiffs have not set forth the specific warning required; the claim duplicates the manufacturing defect claim; plaintiffs do not contest the warnings given by defendant; plaintiffs failed to plead the claim; and plaintiffs have not proven proximate causation of their injuries from the warning provided. Focusing on the warnings given by defendant (Docket No. 129, Def. Atty. Decl., Ex. F, Pls. Response to Def. Request for Production of Documents, Ex. C) (as well as those given by Harley Davidson), as a matter of law these warnings were sufficient to provide adequate warning that the tire was not to be overloaded.  Three documents conveyed the warnings to the rider:  the maintenance and tire care booklet, the sidewall of the tire itself, and the Harley Davidson owner's manual (id., Ex. G).  Combined, they warn the consumer to not exceed the maximum load or maximum pressure on the tire, while the Harley Davidson manual indicated the load carry capabilities, gross vehicle weight rating, and optimal tire pressure (see, e.g., Docket No. 129, Def. Memo. at 6-8).

Defendant argues that plaintiffs concede that a warning was placed on the subject tire (Docket No. 154, Def. Memo. at 20).  Plaintiffs' expert conceded that "a few different bikes in the Harley brand" could use the tire, the "big cruisers" (Docket No. 157, Pls. Response to Supp'al Statement ¶ 27; Docket No. 154, Def. Atty. Decl., Ex. B, Tr. at 73).  Since its tires are used on different models of Harley Davidson motorcycles, defendant concludes that "there was no way for GDTNA [defendant] to know specifically what Harley Davidson model the subject tire would be placed on after it left GDTNA's hands" (id. at 21) to draft a warning specific for the motorcycle the tire might be placed on.  This is especially true for a replacement tire that could be installed on a number of Harley models as opposed to tires ordered by Harley Davidson for original manufacture.

Plaintiffs, anticipating an "overdeflection and underinflation defense," assert the failure to warn claim arguing that "there is nothing provided by [defendant] that would have given any clear indication of the weight limit for the D402 tire on this particular Harley Davidson motorcycle [the subject tire]" (Docket No. 157, Pls. Memo. at 9, quoting Docket No. 129, Def. Atty. Decl. Ex. E, Pls. 2d Supp'al Responses to Interrogs. at 7).  But as a claim, plaintiffs bear the burden of proving the elements of their claim, Collins, supra, 2002 WL 31395929, at *1-2, rather than refuting a potential defense.  Furthermore, defendant (with Harley Davidson) did provide such an indication.  The sidewall of the tire gave the maximum load (908 pounds) and the maximum air pressure (40 psi) for that tire, while the Harley manual gave the load carry capabilities of the motorcycle using that type of tire.  Finally, the maintenance and tire care booklet for that replacement tire advised not exceeding the vehicle load capacity found on the tire sidewall, and the appropriate pressure depending upon "light to medium loads" or "dual

15

riding and other loads" (recommending 40 psi for the latter scenario) (see Docket No. 129, Def.

Memo. at 6-7). While the subject tire was not generic (see Docket No. 157, Pls. Memo. at 10), it

was specific to a number of Harley Davidson models, a fact not disputed by plaintiffs.

Plaintiffs argue that the sufficiency of the warning is a fact issue (e.g., id. at 11, citing

Urena v. Biro Mfg. Co., 114 F.3d 359, 366 (2d Cir. 1997)). The Second Circuit in Urena,

however, was applying New York State strict product liability law in holding that the adequacy

of the warning was "'generally a question of fact to be determined at trial and is not ordinarily

susceptible to the drastic remedy of summary judgment,'" 114 F.3d at 366 (quoting Beyrle v.

Finneron, 199 A.D.2d 1022, 1023, 606 N.Y.S.2d 465, 466 (4th Dep't 1993); citing Harrigan v.

Super Products Corp., Dow & Co., Inc., 237 A.D.2d 882, 882, 654 N.Y.S.2d 503, 504 (4th Dep't

1997)). In Bartlett, the United States District Court for the District of New Hampshire applied

that state's law in crossing summary judgment motions on the adequacy of defendant's drug

safety warning, 731 F. Supp. 2d at 144-45. The Court did not automatically hold that the

adequacy of the warning was a fact issue for trial but ruled it was such an issue after considering

what the warning stated and the record before it, id.[4] New Hampshire does not have a blanket

declaration that the adequacy of warnings is a jury question. Thus, this Court can, on this motion

for summary judgment, determine whether a material issue of fact exists as to the adequacy of

the warnings given to plaintiffs here.

Plaintiffs also fail to provide evidence showing that the degree of warning furnished by

defendant caused their injuries (Docket No. 154, Def. Memo. at 22-23), Brookline Sch. Dist.,

---

[4]After trial and appeal, the Supreme Court ruled that the state's warning rules were
preempted by federal food and drug statutes, Mutual Pharm., supra, 133 S.Ct. 2466.

16

supra, 142 N.H. at 356, 703 A.2d at 261 (dismissing strict liability failure to warn claim where plaintiff failed to produce sufficient evidence of causation).  The warnings were about the maximum load or maximum pressure for the tire but plaintiffs' expert testified that the load did not cause the tires to fail (id.; Docket No. 154, Def. Atty. Decl. Ex. B, Tr. at 79).  Thus a warning about load or pressure would not have prevented this accident.

Thus, plaintiffs' failure to warn claim **should be dismissed** and defendant's motion for summary judgment on this claim **should be granted**.  Given this recommendation, the Court need not address defendant's alternative grounds that the failure to warn claim duplicates their existing manufacturing defect claim, that plaintiffs failed to plead the failure to warn claim or that plaintiffs did not propose the warning that should have been given.

III.    As a Result

If this Report is adopted, plaintiffs' design defect and their failure to warn claims would be dismissed.  What would remain (as remained after the earlier defense motion for summary judgment, see n.3 supra) are plaintiffs' claims for breach of implied warranty (the fifth and sixth causes of action); manufacturing defect (the second cause of action); and strict liability for manufacturing defect (third and fourth causes of action).

## CONCLUSION

Based upon the above, it is recommended that defendant's motion for partial summary judgment dismissing plaintiffs' design defect and failure to warn causes of action (Docket No. 154) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

18

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        September 21, 2016